USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/31/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JULIA W. FEUER,

                    Plaintiff,

    -against-

WESTCHESTER MEDICAL CENTER,
ELIZABETH RICENBERG, and SUSANA
DEALMEIDA,

                    Defendants.

No. 23-CV-11012 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

*Pro se* Plaintiff Julia W. Feuer ("Plaintiff") brings this action against Defendants Westchester County Health Care Corporation ("WCHCC"), Elizabeth Ricenberg, and Susana Dealmeida. Plaintiff alleges that Defendants violated (1) Title VII of the Civil Rights Act of 1964; (2) the Americans with Disabilities Act of 1990; (3) the Rehabilitation Act of 1973; (4) the Family and Medical Leave Act of 1993; (5) Section 7 of the National Labor Relations Act of 1935; (6) New York State Human Rights Law; and (7) New York City Human Rights Law. Plaintiff specifically alleges that Defendants failed to make reasonable accommodation for her disability, interfered with her right to receive medical leave, retaliated against her for engaging in union activity, and discriminated against her disability, all resulting in her constructive discharge. Pending before the Court is WCHCC's ("Defendant") motion to dismiss (ECF No. 35.)[1] Defendant seeks to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

---

[1] WCHCC is the only defendant to submit a motion to dismiss. (ECF No. 35.) After reviewing the docket, it does not appear that either Defendant Ricenberg or Dealmeida responded to the Complaint, which was served on March 19, 2024. (ECF No. 11.) The Court's order is therefore only applicable to WCHCC.

For the following reasons, Defendant's motion to dismiss is GRANTED.

## FACTUAL BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all-well pleaded factual allegations in the Complaint and draws all reasonable inferences in Plaintiff's favor, as summarized below. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### I.    Plaintiff's Employment with WCHCC and Underlying Medical Conditions

Plaintiff was employed with WCHCC approximately from July 2019 to March 2021. (*Id.* at 23.) Plaintiff was employed as an oncology nurse practitioner. (*Id.* at 14.) Plaintiff's responsibilities included treating immunocompromised cancer patients in the oncology unit. (*Id.* at 24.) According to Plaintiff, she was hired to work only in the oncology unit. (*Id.*) The primary reason for why Plaintiff requested to work with the oncology unit was because she suffered from chronic obstructive pulmonary disease ("COPD") and asthma—which affects Plaintiff's ability to breath. (*Id.* at 23–24.)

Plaintiff was diagnosed with COPD and asthma as a child. (*Id.* at 23.) Prior to filing this action, Plaintiff sought treatment from a pulmonologist—a doctor who specializes in diagnosing and treating diseases of the respiratory system—for the past fifteen years. (*Id.*) When the coronavirus disease ("COVID-19") became prevalent in New York during March 2020, Plaintiff's pulmonologist advised her not to treat COVID-19-positive patients. (*Id.* at 14.) Plaintiff thus wanted to continue working in the oncology unit because of the preventive infection measures that were enforced to protect immunocompromised patients. (*Id.* at 24.) According to Plaintiff, other units, such as the emergency room and intensive care units, would put her at risk for contracting COVID-19 because those units required higher levels of interaction with patients. (*Id.*)

### II.    Plaintiff's Requested Work Accommodations

Fearful that contracting COVID-19 would exacerbate her medical conditions, Plaintiff began requesting work accommodations.  Plaintiff first requested leave pursuant to the Family and Medical Leave Act of 1993 ("FMLA") on March 26, 2020.  (*Id*. at 23.)  However, since Plaintiff was not yet employed with WCHCC for at least a year, her request was denied.  (*Id*.)  Plaintiff subsequently requested to either work remotely or be given a private office on March 27, 2020.  (*Id*.)  Plaintiff alleges that this request was made verbally to Defendant Ricenberg and "Patricia K.," Plaintiff's supervisor and manager, respectively.  (*Id*.)  This request was denied on March 30, 2020.  (*Id*.)  However, Defendant Ricenberg purportedly offered Plaintiff to work in a back office with five other employees.  (*Id*. at 17.)  According to Plaintiff, the back office was too small to practice social distancing.  (*Id*.)  On March 31, 2020, Plaintiff submitted paperwork concerning her medical conditions per Defendant Ricenberg's request.  (*Id*.)  Later that day, Plaintiff was directed by WCHCC's human resources department to begin using PTO.  (*Id*.)  Plaintiff was similarly advised by the New York State Nurses Association ("NYSNA")—Plaintiff's union—to use her PTO.  (*Id*.)

Plaintiff proceeded to call out of work from April 1–2, 2020.  (*Id*.)  On April 3, 2020, a WCHCC human resources employee contacted Plaintiff informing her to return to work or face disciplinary action.  (*Id*.)  Plaintiff appeared to not return to work.  On April 6, 2020, Plaintiff was contacted by Defendant Ricenberg to discuss Plaintiff returning to work.  (*Id*. at 18.)  According to Plaintiff, Defendant Ricenberg promised Plaintiff that she would (1) be provided a KN95 and surgical mask weekly and (2) be able to work in the "physicians lounge."  (*Id*.)  Defendant Ricenberg also promised to protect Plaintiff.  (*Id*.)  With these promises, Plaintiff finally returned to work on April 7, 2020.  (*Id*.)

### III.    Plaintiff's Return to Work and Alleged Complaints Concerning Her Work

Upon returning to work, Plaintiff was not tasked with treating COVID-19-positive patients. (*Id.*) However, six months later, on October 23, 2020, Plaintiff began receiving complaints concerning the quality of her work and was asked to meet with Defendant Ricenberg and a NYSNA representative. (*Id.* at 19.) Plaintiff was informed that she incorrectly placed Tylenol on a patient's discharge medicine list, which could possibly mask a fever. (*Id.*) Plaintiff was also informed that she incorrectly placed an unneeded monthly medicine order. (*Id.*) Plaintiff's response to these complaints was that her work became too demanding, likely because of the influx of COVID-19 patients. (*Id.*) Defendant Ricenberg was also displeased with Plaintiff's workflow charts for lacking notes. (*Id.*) According to Plaintiff, however, it was not her responsibility to take notes. (*Id.*)

Plaintiff similarly received more complaints concerning the quality of her work on February 24, 2021. (*Id.*) Specifically, during a meeting with Defendant Dealmeida—Plaintiff's manager—and WCHCC human resource representatives, Plaintiff received "specific patient issues." (*Id.*) Defendant Dealmeida also inquired why Plaintiff refused to treat COVID-19-positive patients. (*Id.*) In response, Plaintiff referred to her March 2020 conversations with Defendant Ricenberg and noted that her medical conditions prevented her from doing so. (*Id.*) Defendant Dealmeida then allegedly pressed Plaintiff to treat COVID-19-positive patients. (*Id.*) Plaintiff informed Defendant Dealmeida that she would not go against her pulmonologist's recommendation and that her medical conditions required reasonable accommodation. (*Id.*) At the end of the meeting, Plaintiff claims that the WCHCC human resources representatives acknowledged her request for an accommodation. (*Id.*) A few weeks later, Plaintiff called out from work from March 1–14, 2021 to quarantine because she was in contact with her mother who tested positive for COVID-19. (*Id.* at 20.)

Upon returning to work on March 15, 2021, Plaintiff again received complaints concerning the quality of her work. Specifically, Plaintiff got into a dispute with her coworker who asserted it was unfair that Plaintiff refused to care for COVID-19-positive patients. (*Id*.) Plaintiff's coworker eventually informed Defendant Dealmeida of the dispute. (*Id*.) Despite Plaintiff protesting that she could not treat COVID-19-positive patients because of her COPD and asthma, Defendant Dealmeida insisted that discussing Plaintiff's medical conditions was an "offline issue." (*Id*.) However, Plaintiff pressed the issue and asserted it was an "online conversation." (*Id*.) Defendant Dealmeida ultimately assigned Plaintiff thirteen patients while only assigning Plaintiff's coworker to five patients, which Plaintiff alleges was unfair. (*Id*. at 21.) Plaintiff was told that her coworker received less patients because those patients were on different floors throughout the hospital. (*Id*.) Plaintiff also alleges that four of her thirteen patients were COVID-19-positive. (*Id*.)

Later that day, Defendant Dealmeida requested to have a private conversation with Plaintiff, where she gave Plaintiff the ultimatum of treating COVID-19-positive patients or going home until she was fit to work. (*Id*.) Plaintiff decided to go home so she could speak with her pulmonologist. (*Id*.) Plaintiff also inquired whether the NYSNA was aware of this conversation. (*Id*.) Defendant Dealmeida allegedly answered "no" but gave Plaintiff permission to inform them. (*Id*.) Plaintiff proceeded to go home, without pay, and contacted the NYSNA, who advised her to remain home and provide further documentation concerning her medical conditions. (*Id*.)

On March 16, 2021, Plaintiff was informed that her time home would not be covered by FMLA. (*Id*.) Plaintiff was also informed that she could not use her vacation days. (*Id*.) Later that day, a WCHCC human resources representative contacted Plaintiff instructing her to return to work. (*Id*.) Despite Plaintiff explaining her medical conditions, and previous conversations with

Defendant Ricenberg, the WCHCC human resources representative purportedly stated that "those discussions never happened" and that Plaintiff must "return to work today." (*Id*.) Plaintiff ended the conversation by stating she was going to contact NYSNA. (*Id*.)

When Plaintiff contacted NYSNA, however, she was informed that she must return to work or face disciplinary action. (*Id*.) WCHCC allegedly informed NYSNA that Plaintiff (1) was not forthcoming with her medical conditions and (2) that her medical conditions were "not real." (*Id*. at 22.) In response, Plaintiff explained that she regularly informed WCHCC about her medical conditions since March 2020 and that she resubmitted FMLA paperwork. (*Id*.) Ultimately, Plaintiff submitted her resignation to WCHCC, citing concern of being forced to treat COVID-19-positive patients. (*Id*.) Shortly after resigning, however, Plaintiff's FMLA leave was approved. (*Id*. at 15.)

## PROCEDURAL HISTORY

Prior to filing this *pro se* action, Plaintiff filed a discrimination charge with the U.S. Equal Employment Opportunity Commission ("EEOC') on August 3, 2021. (Compl. at 14–22.) The EEOC provided Plaintiff with a notice of right to sue on September 21, 2023. (*Id*. at 9.) On December 19, 2023, Plaintiff commenced this *pro se* action. (ECF No. 1.) The Court then referred this *pro se* action to the Court's mediation program on March 19, 2024. (ECF No. 9.) Despite mediating on November 18, 2024, the parties were unsuccessful in resolving any issue in this case. (ECF No. 30.) Shortly thereafter, Defendant moved to dismiss the Complaint on March 18, 2025. (ECF No. 35.) Plaintiff opposed the motion. (ECF No. 39.) Defendants filed a reply memorandum in further support of their motion. (ECF No. 40.)

## LEGAL STANDARD

### a.  Federal Rule of Civil Procedure 12(b)(1)

A "case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation omitted). Further, "a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F. 3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). When this Court assesses whether there is subject matter jurisdiction, it must accept as true all material facts alleged in the complaint, *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009), however, "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings." *Schiavone v. New York State Office of Rent Administration,* 2018 WL 5777029, 1–2 (S.D.N.Y. 2018) (quoting *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

### b. Federal Rule of Civil Procedure Rule 12(b)(6)

On a 12(b)(6) motion, dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Where a *pro se* plaintiff is concerned, courts must construe the pleadings in a particularly liberal fashion. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). In fact, courts must interpret the *pro se* plaintiff's pleading "to raise the strongest arguments that [it] suggest[s]." *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotations and citation omitted). Nevertheless, a *pro se* plaintiff's pleadings must contain factual allegations that sufficiently "raise a right to relief above the speculative level," *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010), and the court's duty to construe the complaint liberally is not "the equivalent of a duty to re-write it," *Geldzahler v. N.Y. Med. College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

## DISCUSSION

Plaintiff asserts claims under: (1) Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) the Americans with Disabilities Act of 1990 ("ADA"); (3) the Rehabilitation Act of 1973 ("Rehab Act"); (4) the FMLA; (5) Section 7 of the National Labor Relations Act of 1935 ("NLRA"); (6) New York State Human Rights Law ("NYSHRL"); and (7) New York City Human Rights Law ("NYCHRL"). (Compl. at 5–7.) Plaintiff specifically alleges that WCHCC failed to reasonably accommodate her disability, interfered with her right to receive medical leave, retaliated against her for engaging in union activity, and discriminated against her disability. (*Id.* at 5.) WCHCC moves to dismiss the Complaint in its entirety.[2] (ECF No. 37, "Def. Mot.")

### I.    Title VII Claims

---

[2] As a threshold matter, Defendant asserts that the Complaint should be dismissed for failure to timely effect service because Plaintiff was two weeks late in serving WCHCC. (Def. Mot. at 3.) As the Federal Rules of Civil Procedure make clear, "[t]he plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m)." Fed. R. Civ. P. 4(c)(1). "An exception to this rule exists if a plaintiff is able to demonstrate good cause for failure to timely serve." *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 321 (S.D.N.Y. 2016). In the absence of good cause, the Court nevertheless retains "the discretion to grant an extension of time to serve the defendant." *Hahn v. Off. & Pro. Emps. Int'l Union*, 107 F. Supp. 3d 379, 382 (S.D.N.Y. 2015). The Court rejects Defendant's argument because, at best, *pro se* Plaintiff's two-week delay is de minimis.

Defendant first moves to dismiss Plaintiff's Title VII claims.  (Def. Mot. at 9.)  Defendant asserts, among other things, that Plaintiff's disability discrimination is not protected under Title VII.  (*Id*.)

Title VII provides that an employer cannot discriminate against "any individual" based on his or her "race, color, religion, sex, or national origin."  *Billings v. New York State Dep't of Corr.*, 2022 WL 3577970, at *4 (S.D.N.Y. Aug. 19, 2022), *aff'd in part, vacated in part, remanded sub nom. Billings v. Murphy*, 2024 WL 444727 (2d Cir. Feb. 6, 2024) (quoting 42 U.S.C. § 2000e-2(a)(1)).  To survive a motion to dismiss, a plaintiff must plausibly allege two elements: "(1) the employer discriminated against [her] (2) because of [her] race, color, religion, sex, or national origin."  *Lowman v. NVI LLC*, 821 Fed. Appx. 29, 30 (2d Cir. 2020) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015)).

Despite Plaintiff's discrimination, retaliation, and hostile work environment claims made on the basis of her medical conditions, "Title VII does not prohibit discrimination on the basis of disability."  *Risco v. McHugh*, 868 F. Supp. 2d 75, 106 (S.D.N.Y. 2012) (citing *Prince v. Westchester Cnty. Dep't of Health*, 1992 WL 123170, at *4 (S.D.N.Y. May 27, 1992); *see also Julian v. N.Y. City Trans. Auth.,* 857 F. Supp. 242, 250 (E.D.N.Y.1994) (same), *aff'd,* 52 F.3d 312 (2d Cir.1995); 42 U.S.C. § 12101(a)(4) (explaining that Congress enacted the ADA, in part, because Title VII only protects against "race, color, sex, national origin, religion, or age" discrimination).  Accordingly, the Court dismisses Plaintiff's Title VII claims made on the basis of her medical conditions with prejudice.

## II.    Rehab Act Claims

Defendant next moves to dismiss Plaintiff's Rehab Act claims. (Def. Mot. at 8.) Defendant asserts, among other things, that Plaintiff fails to allege that WCHCC is subject to the Rehab Act. (*Id*.)

Despite Plaintiff not specifying which provision of the Rehab Act she is asserting her claims under, the Court notes that Section 503 of the Rehab Act does not provide a private right of action. *See*, *e.g.*, *Rhoda v. Cent. Hudson Gas & Elec. Corp.*, 2024 WL 1158453, at *5 (S.D.N.Y. Mar. 16, 2024); *Davis v. United Air Lines, Inc.*, 662 F.2d 120, 127 (2d Cir. 1981); *see also Burke v. Niagra Mohawk Power Corp.*, 142 Fed. App'x 527, 528 (2d Cir. 2005) (affirming dismissal of a claim brough under Section 503 of the Rehab Act for lack of a private right of action) (summary order); *Hoffman v. City College of New York*, 2021 WL 1226498, at *7 (S.D.N.Y. March 30, 2021).

However, Section 504 of the Rehab Act prohibits discrimination against any qualified individual with a disability by, pertinently, "any program or activity receiving Federal financial assistance…." *Rhoda*, 2024 WL 1158453, at *5 (citing 29 U.S.C. § 794(a)). Nevertheless, Plaintiff fails to affirmatively allege that WCHCC receives federal financial assistance. Even with the "special solicitude" afforded to a *pro se* plaintiff, there is no basis for the Court to construe that Plaintiff's allegations sufficiently state that WCHCC receives federal financial assistance within the meaning of the Rehab Act. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006). Therefore, the Court dismisses Plaintiff's Rehab Act claims without prejudice.

## III. ADA Claims

The Court will now consider Plaintiff's ADA claims asserted against WCHCC.

### a. ADA Partial Time-Bar

As a preliminary matter, Defendant asserts that Plaintiff's ADA claims are partially time-barred. (Def. Mot at 8.) ADA claims require a plaintiff to file a charge of discrimination with the

EEOC within 300 days of the alleged discriminatory acts. *See Burgess v. New Sch. Univ.*, 2024 WL 4149240, at *8 (S.D.N.Y. Sept. 11, 2024); *see Harris v. City of New York*, 186 F.3d 243, 247–48 (2d Cir. 1999) (addressing time-barred ADA claims). After reviewing the Complaint, the Court determines that Plaintiff filed her charge of discrimination with the EEOC on August 3, 2021.[3] (Compl. at 14–16.) Consequently, that means any of Plaintiff's allegations occurring before October 7, 2020 are time-bared under the ADA. The Court will therefore only consider Plaintiff's allegations made on or after October 7, 2020 when analyzing whether Plaintiff's sufficiency pleads an ADA violation.

### b. Discrimination Claims

#### i. The Existence of a "Disability" Within the Meaning of the ADA

Turning to a substantive threshold, a plaintiff alleging a discrimination violation must adequately plead the existence of a "disability" within the meaning of the ADA. 42 U.S.C. § 12112(a). A disability is "a physical or mental impairment that substantially limits one or more major life activities…" of an individual. 42 U.S.C. § 12102(1)(A). Courts perform a three-step analysis to determine whether a plaintiff has sufficiently stated a "disability" under the ADA and consider whether: (1) the plaintiff suffered from a physical or mental impairment; (2) the life activity upon which the plaintiff relied amounts to a major life activity under the ADA, and (3) the impairment substantially limited that major life activity as identified by the plaintiff. *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 201 (2d Cir. 2004) (citing *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 641 (2d Cir. 1998)). In other words, not every impairment is a disability under

---

[3] The Court acknowledges that Plaintiff alleges that she filed her charge of discrimination with the EEOC on May 13, 2021. (Compl. at 6.) After reviewing Plaintiff's EEOC charge, however, it appears that she signed the charge on August 3, 2021. (*Id.* at 14–16.) Liberally construing the pleadings, the Court will accept that *pro se* Plaintiff filed her EEOC charge on August 3, 2021. *See Harris*, 572 F.3d at 72.

the ADA. *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005). The impairment must: (1) limit a major life activity and (2) that limitation must be substantial. *Id.* Moreover, a plaintiff must elaborate on whether the alleged impairment interfered with her alleged major life activity "during the period of alleged discrimination by Defendants." *Earl v. Good Samaritan Hosp. of Suffern NY*, 625 F. Supp. 3d 292, 304 (S.D.N.Y. 2022), *aff'd*, 2023 WL 8708417 (2d Cir. Dec. 18, 2023) (citing *Telemaque v. Marriott Int'l, Inc.*, 2016 WL 406384, at *9 (S.D.N.Y. Feb. 2, 2016)).

Despite Plaintiff alleging that she was diagnosed with COPD and asthma as a child, she fails to make any specific allegation on how her medical conditions substantially limited a major life activity. Instead, the entirety of Plaintiff's allegations hinge on the fact that contracting COVID-19 could possibly exacerbate her medical conditions. (*See, e.g.*, Compl. at 25.) Plaintiff nevertheless alleges that she contracted COVID-19 several times yet fails to specify how it exacerbated her medical conditions. (*See, e.g.*, Compl. at 20.) Insofar as Plaintiff alleges that her medical conditions were exacerbated, she fails to "plausibly allege how such disease constituted a disability or handicap *during [her] employment at the Hospital.*"[4] *Earl*, 625 F. Supp. 3d at 304; *see also Langella v. Mahopac Cent. Sch. Dist.*, 2020 WL 2836760, at *10 (S.D.N.Y. May 31, 2020) (dismissing ADA claim where plaintiff did "not allege how, if at all, his hypertension or heart disease impacts a major life activity, let alone that either significantly restricts it"). Finally, while Plaintiff also alleges that her pulmonologist advised her against treating COVID-19-positive patients, "it is the nature of the ordinary limitations—not the severity of the consequences if a plaintiff fails to follow necessary treatment—that determines whether a limitation on a major life activity is substantial." *Krikelis v. Vassar Coll.*, 581 F. Supp. 2d 476, 485 (S.D.N.Y. 2008).

---

[4] While Plaintiff asserts that her medical conditions suffered negative side effects sometime in 2022, this event nevertheless occurred after Plaintiff's employment with WCHCC. (ECF No. 39, "Pl. Opp." at 2–3.)

In sum, Plaintiff fails to plausibly allege that she has an impairment that substantially impairs one or more major life activity and therefore fails to establish that she is disabled within the meaning of the ADA.  Therefore, the Court dismisses Plaintiff's ADA discrimination claims without prejudice.

### c.  Retaliation Claims

Despite the Court's dismissal of Plaintiff's discrimination claim, a plaintiff may still assert a retaliation claim "so long as [s]he can establish that [s]he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law." *Anderson v. City of New York*, 712 F. Supp. 3d 412, 433 (S.D.N.Y. 2024) (citing *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)).  There are no factual allegations or other arguments indicating that Plaintiff lacked a good faith belief that she had a disability and her employer's alleged discrimination against her was due to that disability.  Accordingly, for the purposes of this motion, the Court analyzes Plaintiff's retaliation claim under the ADA.[5]

For a retaliation claim to survive a motion to dismiss, a "plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against [him or her], (2) 'because' he [or she] has opposed any unlawful employment practice." *Riddle v. Citigroup*, 640 F. App'x 77, 79 (2d Cir. 2016) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015)).  In the context of a retaliation claim, an adverse employment action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe R.R. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations omitted).  To plead causation, a plaintiff must allege "that his [or her] protected activity

---

[5] Defendant asserts that the Court should not entertain Plaintiff's retaliation claims because she failed to check the retaliation box on her EEOC charge.  (Def. Mot. at 17.)  However, "Plaintiff's failure to check the 'retaliation' box on the EEOC charge is not dispositive[.]"  *Innes v. Cnty. of Warren*, 2023 WL 3601237, at *7 (N.D.N.Y. May 23, 2023); *Jones v. N.Y.C. Dep't of Educ.*, 286 F. Supp. 3d 442, 448 (E.D.N.Y. Feb. 22, 2018) (same).

was the but-for cause of the adverse employment action." *Ninying v. N.Y.C. Fire Dep't*, 807 F. App'x 112, 115 (2d Cir. 2020). Temporal proximity between the adverse action and the protected activity is sufficient to establish a causal connection. *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019).

Plaintiff alleges that she was retaliated against for submitting complaints to NYSNA concerning her unsafe working assignments. (Pl. Opp. at 7.) Consequently, Plaintiff alleges that she had to attend accusatory meetings and was ultimately forced to resign. (*Id*.) "Filing a union grievance regarding discriminatory treatment is a protected activity." *Harvey v. Bus. Integrity Comm'n*, 2025 WL 1482330, at *9 (S.D.N.Y. May 23, 2025), *report and recommendation adopted*, 2025 WL 2419916 (S.D.N.Y. Aug. 21, 2025) (citing *Washington v. Garage Mgmt. Corp.*, 2012 WL 4336163, at *17 (S.D.N.Y. Sept. 20, 2012). Nevertheless, "union grievances that do not complain of discrimination do not constitute a protected activity." *Id*. (citing *Melie v. EVCI/TCI Coll. Admin.*, 374 F. App'x 150, 153 (2d Cir. 2010) (summary order)).

On the facts pled, however, Plaintiff does not provide any instances of informing NYSNA about discrimination. Indeed, most of Plaintiff's conversations with NYSNA primarily concerned obtaining FMLA leave, which she ultimately obtained, and her concerns about treating COVID-19-positive patients. (Compl. at 15, 21.) Plaintiff also concedes that Defendant Dealmeida gave Plaintiff permission to contact NYSNA concerning her medical conditions. (*Id*. at 21.) Furthermore, most, if not all, of Plaintiff's retaliation allegations are conclusory. (*See, e.g.*, *Id*. at 5) (WCHCC "retaliated against me for requesting leave or accommodations [and] protected union activity").

Similarly, Plaintiff's resignation from her position was not an adverse employment action. Courts generally presume that an employee's decision to resign from a position is voluntary. *See*

*Schiavone v. New York State Off. of Rent Admin.*, 2018 WL 5777029, at *5 (S.D.N.Y. Nov. 2, 2018) (citing *Stewart v. Gates*, 786 F. Supp. 2d 155, 167 (D.D.C. 2011).  In certain cases, an employee may demonstrate that their resignation was not voluntary and was in fact constructive discharge.  *Id.*; *Stofsky v. Pawling Cent. Sch. Dist.*, 635 F. Supp. 2d 272, 299 (S.D.N.Y. 2009). "Constructive discharge occurs when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Stofsky*, 635 F. Supp. 2d at 299.  Here, Plaintiff alleges that she was forced to resign due to unsafe working conditions, *i.e.*, treating COVID-19-positive patients.  (Compl. at 22.) Plaintiff nevertheless was an occupational nurse at a hospital during the height of the COVID-19 pandemic.  At one point or another, Plaintiff—while performing her essential job duties—was going to be in contact with COVID-19-positive patients.  Therefore, the Court finds that Plaintiff's Complaint contains insufficient facts to support a facially plausible claim for retaliation and denies such claims without prejudice.

## IV.    FMLA Claims

Defendant next moves to dismiss Plaintiff's FMLA claims asserting, among other things, that Plaintiff's claims are untimely.  (Def. Mot. at 18–21.)

The statute of limitations for an FMLA claim is two years after "the date of the last event constituting the alleged violation for which the action is brought."  *Macklin v. Am. Bldg. Maint.*, 2016 WL 423657, at *3 (S.D.N.Y. Jan. 7, 2016), *report and recommendation adopted*, 2016 WL 439067 (S.D.N.Y. Feb. 3, 2016) (citing 29 U.S.C. § 2617(c)(1)).  If a violation is willful, the statute of limitations extends to three years.  *Id.* (citing 29 U.S.C. § 2617(c)(2)).  A violation of the FMLA occurs when an employer interferes with an employee's "exercise of or the attempt to exercise" rights under the statute.  *Id.* (29 U.S.C. § 2615(a)(1)).  An employer acts willfully when it "knew

or showed reckless disregard for the matter of whether its conduct was prohibited by" the FMLA. *Offor v. Mercy Med. Ctr.*, 676 F. App'x 51, 53 (2d Cir. 2017); *Riddle v. Citigroup*, 449 Fed. Appx. 66, 70 (2d Cir. 2011) (quoting *Porter v. N.Y. Sch. of Law*, 392 F.3d 530, 531 (2d Cir.2004)).

Here, Plaintiff resigned from WCHCC on March 16, 2021 and commenced this action on December 19, 2023. (Compl. at 21.) Hence, Plaintiff brings her FMLA claim between two and three years of the alleged violations, meaning the timeliness of her claims depend on whether she has plausibly alleged a "willful" violation. Even with construing the Complaint in a liberal fashion, however, the Court does not find that WCHCC willfully violated the FMLA. WCHCC denied Plaintiff's first FMLA request on March 26, 2020 because she had not been employed for more than one year. (Compl. at 17.) Being employed for at least a year with your employer is a statutory prerequisite for FMLA leave. *See* 29 U.S.C. § 2611(2)(A)(i). Although the timeline is unclear in the Complaint, Plaintiff appeared to reapply for FLMA leave on or around March 2021. (Compl. at 21.) At first, Plaintiff alleges that this request was denied on March 16, 2021. (*Id*.) Plaintiff then concedes that her FMLA leave was eventually granted shortly after resigning. (*Id*. at 15.) Although Plaintiff also alleges that WCHCC created a significant delay in approving her FMLA leave, the Complaint fails to provide specific instances of WCHCC engaging in such behavior. (*Id*. at 8.) The Court thus finds that Plaintiff is not entitled to a three-year status of limitations— meaning her claims became time-bared as of December 19, 2021.

Accordingly, Plaintiff's FMLA claims are untimely and are dismissed without prejudice. *See Offor*, 676 F. App'x at 53 (the "complaint concedes that [plaintiff] was eventually allowed to take the vacation time she requested, and the emails attached to her complaint contain reasonable justifications for why [defendant] initially denied her vacation time. Neither the complaint nor her opposition explain why any alleged violation of the FMLA would have been 'willful'"); *Murillo-*

16

*Roman v. Pension Boards-United Church of Christ*, 2024 WL 246018, at *8 (S.D.N.Y. Jan. 23, 2024) (dismissing FLMA claims as untimely where plaintiff failed to dispute the issue and failed to allege any willful violation).

## V.    National Labor Relations Act Claims

Defendant next moves to dismiss Plaintiff's Section 7 of the NLRA claims asserting they are preempted.  (Def. Mot. at 22.)

Unfair labor practice claims fall within the "exclusive jurisdiction" of the National Labor Relations Board ("NLRB")—largely precluding the exercise of jurisdiction by federal courts.  *See Sahni v. Staff Att'ys Ass'n*, 2018 WL 654467, at *9 (S.D.N.Y. Jan. 30, 2018); *see also United Auto., Aerospace & Agr. Implement Workers of Am., Local 33 v. R.E. Dietz Co.,* 996 F.2d 592, 595 (2d Cir. 1993) ("Because the [NLRB] generally has exclusive jurisdiction over unfair labor practice claims, the district court would not have jurisdiction over this claim."); *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 83 (1982) ("As a general rule, federal courts do not have jurisdiction over activity which is arguably subject to § 7 or § 8 of the [NLRA] and the must defer to the exclusive competence of the [NLRB]." (internal quotation marks omitted)).

Accordingly, the Court dismisses Plaintiff's Section 7 of the NLRA claims for lack of jurisdiction.

## VI.    State Law Claims

Plaintiff also brings state law claims against Defendant under the NYSHRL and NYCHRL for disability discrimination.  (Compl. at 4.)  Defendant moves to dismiss these claims for the same reasons as Plaintiff's federal claims.  (Def. Mot. at 23–25.)

### a.    Supplemental Jurisdiction

Before the Court assesses the viability of Plaintiff's NYSHRL and NYCHRL claims, however, it must first determine whether to exercise supplemental jurisdiction over those claims, given that it has dismissed all of Plaintiff's federal claims.  Federal courts have supplemental jurisdiction over non-federal claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  But in the event a court dismisses "all claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction" over those non-federal claims.  *Id*. § 1367(c)(3).  When deciding whether to exercise supplemental jurisdiction over a claim, a district court should "consider and weigh… the values of judicial economy, convenience, fairness, and comity."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors… will point toward declining jurisdiction over the remaining state-law claims."  *In re Merrill Lynch Ltd. P'ship Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (internal citations and quotations omitted).

Here, however, the balance of factors supports exercising supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims.  "It is well established that claims for discrimination, retaliation, and a hostile work environment under the NYSHRL are analyzed under the same legal framework as its federal counterparts."  *Iazzetti v. Town of Tuxedo*, 2020 WL 4340872, at *12 (S.D.N.Y. July 27, 2020).  Moreover, because the standards are identical, deciding the NYSHRL claims would not require an investment of additional judicial resources, and there would be no comity issues triggered.  *See Oliver v. N.Y.S. Police*, 2020 WL 1849484, at *10 (N.D.N.Y. Apr. 13, 2020) ("However, where, as here, the 'standards of liability are identical under [federal law] and the NYSHRL[,] deciding the state-law claims does not require the investment of additional judicial resources,' and there is no 'substantial comity concern raised by this Court's application of state

law with which courts in this District are eminently familiar,' the Court concludes 'the values of judicial economy, convenience, fairness, and comity,' support the exercise of supplemental jurisdiction over Plaintiff's NYSHRL claims."); *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 413 (S.D.N.Y. 2014) (same).   Federal courts similarly "apply federal standards to NYCHRL claims." *Bramble v. Moody's Corp.*, 2023 WL 2330475, at *5 (S.D.N.Y. Mar. 2, 2023), *aff'd*, 2024 WL 705955 (2d Cir. Feb. 21, 2024).

Having decided that it will continue to exercise supplemental jurisdiction, the Court now turns to Plaintiff's NYSHRL and NYCHRL claims.

### b.  NYSHRL Claims

"New York Public Authorities Law § 3316… requires compliance with General Municipal Law § 50-e to maintain an action against a public benefit corporation such as the Westchester County Health Care Corporation… Absent a showing by the plaintiff that a notice of claim has been served, the complaint may be dismissed." *Obi v. Westchester Med. Reg'l Physician Servs., P.C.*, 2020 WL 1434159, at *4 (S.D.N.Y. Mar. 23, 2020) (citing *Cortlandt v. Westchester County*, 2007 WL 3238674, at *7 (S.D.N.Y. Oct. 31, 2007); *see also Harris v. Viau*, 2019 WL 1331632, at *6, n.5 (S.D.N.Y. Mar. 25, 2019) (noting notice of claim required before filing suit against Westchester County Health Care Corporation).

Here, Plaintiff does not allege, in either her Complaint or opposition, that she filed a notice of claim against Defendant.   Nevertheless, Plaintiff's NYSHRL claims can be swiftly disposed of on the merits because "[i]t is well established that claims for discrimination, retaliation, and a hostile work environment under the NYSHRL are analyzed under the same legal framework as its federal counterparts." *Iazzetti*, 2020 WL 4340872, at *12.   As discussed in detail above, Plaintiff

fails to sufficiently plead a discrimination violation under any of her federal claims. Accordingly, Plaintiff's NYSHRL claims against Defendant are dismissed without prejudice.

### c. NYCHRL Claims

The NYCHRL does not apply to discriminatory acts that occurred outside of New York City. *See Joseph v. Westchester Cnty. Dep't of Cmty. Mental Health*, 2020 WL 2555334, at *2 (S.D.N.Y. May 19, 2020); *see also Hardwick v. Auriemma*, 116 A.D. 3d 465, 466 (1st Dep't 2014); *Shah v. Wilco Sys, Inc.*, 27 A.D. 3d 169, 175 (1st Dep't 2005); *Hoffman v. Parade Publ'ns*, 15 N.Y. 3d 285, 291 (2010) (The NYCHRL's "impact requirement is relatively simple for courts to apply and litigants to follow, leads to predictable results, and confines the protections of the NYCHRL to those who are meant to be protected–those who work in the city."). Here, Plaintiff worked for WCHCC in Valhalla, New York—which is not located in New York City. (Compl. at 2.) Plaintiff also does not assert that any of the alleged violations occurred in New York City. Therefore, the Court dismisses Plaintiff's NYCHRL claims with prejudice.

## VII. Leave to Amend

Finally, Defendant asserts that Plaintiff should not be given leave to amend her Complaint. (ECF No. 40 at 10.) "Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citations omitted). When exercising this discretion, courts consider many factors, including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility. *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, the Court will grant Plaintiff leave to file an amended complaint as to those claims dismissed without prejudice.  Notwithstanding the above explained deficiencies, Plaintiff could potentially plead facts that cure her Complaint's various defects.  Although Plaintiff certainly has high hurdles to overcome, leave to amend in this case would not necessarily be futile at this juncture.  Furthermore, as this case is still in its infancy, there would be minimal prejudice to Defendants in permitting Plaintiff to amend.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's Complaint is GRANTED.  The Court, however, grants Plaintiff leave to file an amended complaint in accordance with this Order as to those claims which were dismissed without prejudice.  Plaintiff is advised that the amended complaint will replace, not supplement, the original complaint, and so any claims she wishes to pursue must be included in the amended complaint.  If she chooses to do so, Plaintiff shall have until December 5, 2025, to file her amended complaint.  Should Plaintiff file an amended complaint, the Defendants are directed to answer or otherwise respond to the amended pleading by December 30, 2025.  If *pro se* Plaintiff fails to timely file an amended complaint, those claims that were dismissed without prejudice shall be deemed dismissed with prejudice.

The Clerk of Court is directed to terminate the motion at ECF No. 35.

SO ORDERED.

Dated: October 31, 2025
      White Plains, NY

_____
      Nelson S. Román, U.S.D.J.